IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI

ANGELA ANDERSON, Personally,
and on behalf of the WRONGFUL DEATH
BENEFICIARIES of PRINCESS ANDERSON                                PLAINTIFFS

V.                                                               CASE NO. 3:12cv92

MARSHALL COUNTY, MISSISSIPPI,
KENNY DICKERSON, AND BAPTIST
MEMORIAL HOSPITAL - DESOTO                                       DEFENDANTS

## MEMORANDUM OPINION

Presently before the court is the motion to dismiss based on qualified immunity of Kenny Dickerson, Sheriff of Marshall County Mississippi. Plaintiff Angela Anderson has responded in opposition. Upon due consideration, the court is prepared to rule.

This is a wrongful death action arising out of Princess Anderson's incarceration in the Marshall County Jail, who, according to the complaint, was found naked and unconscious in her jail cell on February 11, 2011. She died in the Baptist Memorial Hospital (BMH) of Union County on March 15, 2011. As no discovery has been conducted in this matter, the court will confine its analysis to whether the complaint sufficiently sets forth allegations on which judgment could issue against Kenny Dickerson.

The facts as alleged in the complaint follow. Decedent, Princess Anderson, "presented to the emergency room of Baptist Memorial Hospital (BMH) in Collierville, Tennessee, with a chief complaint of nausea." Several tests, including an ultrasound, revealed that Anderson was pregnant. She checked out of the hospital at 3:50 p.m., only to return at 10:25p.m., "with a chief complaint of Opiod [*sic*] abuse and hyperventilation." Anderson was suffering from an altered mental state and acute psychosis.

1

Anderson was involuntarily referred to psychiatric counseling "due to Anderson's behavior and based on BMH-Desoto's determination that there was nothing they could do for the patient medically." The next day, "a writ was issued to the Desoto County Sheriff to take Anderson to a County Crisis Center if room was available, and if not, to the County Jail. Also on February 8, 2011, an order transferring the matter to Marshall County was entered."

The Marshall County Sheriff's office transported Anderson to the Marshall County Jail at 1:03 p.m. On February 11, 2011, Anderson's daughter, Angela, visited her mother and found her naked on the floor of her cell, at which time an ambulance was called at Angela's insistence. Between Anderson's arrival at the jail until her daughter discovered her, Anderson received no medical treatment. She subsequently died in the hospital on March 15, 2011.

The facts alleged against Sheriff Kenny Dickerson follow in full:

> 42. Pursuant to 42 U.S.C. §1983, Plaintiff asserts that Kenny Dickerson was deliberately indifferent to the serious medical needs of the decedent, Princess Anderson, and that due to the deliberate indifference decedent failed to receive necessary medical care and as direct [*sic*] proximate cause, or proximate contributing cause, thereby died.
> 43. Detainees, such as the decedent, have a constitutional right under the 14th Amendment and 8th Amendment of the United States Constitution to basic human needs, including medical care for serious conditions.
> 44. Kenny Dickerson violated decedent's constitutional rights set forth above by failing to provide reasonable medical care for a serious condition and by deliberately and knowingly failing to provide medical care or call for medical help for a detainee who was objectively suffering from a seriouis life threatening medical condition.
> 45. Kenny Dickerson had actual knowledge of the decedent's deteriorating condition but purposefully and deliberately ignored the condition thereby resulting in the death of the decedent.
> 46. Defendant Kenny Dickerson's conduct herein was objectively unreasonable in light of the clearly established law at the time, which law required that a detainee's serious medical condition not be met with deliberate indifference.
> 47. As a direct and proximate cause, or proximate contributing cause of the conduct described above, the decedent was caused to suffer serious injury, medical bills, pain and suffering, anguish, loss of enjoyment of life, and ultimately death, together with such other damages as may be shown through discovery or at trial.

Much of Anderson's response to the present motion focuses on the timeliness of the motion. Anderson argues that the motion is premature because discovery has not been conducted. "Rule 56 does not require that any discovery take place before summary judgment can be granted." *Baker v. American Airlines, Inc.*, 430 F.3d 750, 756 (5th Cir. 2005)(citing *Washington v. Allstate Ins. Co.*, 901 F.2d 1281, 1285 (5th Cir.1990)). A nonmovant may show by affidavit that it cannot present facts essential to justify its opposition, under which circumstances the court may defer or deny the motion for summary judgment. Fed. R. Civ. P. 56(d). However, the rule, by its plain language, requires the nonmovant to provide specified reasons for its inability to present opposing facts. *Id.*

Anderson has not provided specific reasons for her inability to present opposing facts, asserting instead that "the proof of evidence of the conditions involving the decedent's detention, naturally, are in the possession of the moving Defendant". The court does not consider this contention specific enough to reserve judgment on the motion.

Moreover, the Supreme Court has "made clear that the driving force behind creation of the qualified immunity doctrine was a desire to ensure that insubstantial claims against government officials will be resolved prior to discovery. Accordingly, we repeatedly have stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Pearson v. Callahan*, 555 U.S. 223, 231-32, 129 S.Ct. 808, 815 (U.S.,2009)(internal citations and quotations omitted). The court will, therefore, rule on the motion at this juncture.

"The usual summary judgment burden of proof is altered in the case of a qualified immunity defense. An officer need only plead his good faith, which then shifts the burden to the plaintiff, who must rebut the defense by establishing that the officer's allegedly wrongful conduct violated clearly established law. The plaintiff bears the burden of negating the defense and

cannot rest on conclusory allegations and assertions but must demonstrate genuine issues of material fact regarding the reasonableness of the officer's conduct." *Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005)(internal citations omitted).

The doctrine of qualified immunity shields a governmental official from civil liability for damages based upon the performance of discretionary functions if the official's acts did not violate clearly established constitutional or statutory law of which a reasonable person would have known. *Easter v. Powell*, 467 F.3d 459, 462 (5th Cir. 2006). The court follows a two-pronged analysis to determine whether a defendant is entitled to qualified immunity, inquiring (1) whether, taken in the light most favorable to the party asserting the injury, the facts alleged show the official's conduct violated a constitutional right and, (2) whether the constitutional right was clearly established at the time the conduct occurred. *Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 2156 (2001).

It is well established that a defendant who "pleads qualified immunity and shows he is a governmental official whose position involves the exercise of discretion" thereby places the burden on the plaintiff to "rebut this defense by establishing that the official's allegedly wrongful conduct violated clearly established law." *Pierce v. Smith*, 117 F.3d 866, 871-72 (5th Cir.1997). It is thus apparent that it is the plaintiff, rather than the defendant, who must do most of the "heavy lifting" in the qualified immunity context.

The Supreme Court held in *Pearson* that "the *Saucier* procedure should not be regarded as an inflexible requirement." *Pearson*, 555 U.S. at 227. "While the sequence set forth there is often appropriate, it should no longer be regarded as mandatory. The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding

which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id*. at 236.

The *Pearson* court provided a thorough discussion of circumstances under which the second prong of the qualified immunity framework is the more desirable starting place. At least two such circumstances are present here. First, "adherence to *Saucier*'s two-step protocol departs from the general rule of constitutional avoidance and runs counter to the older, wiser judicial counsel not to pass on questions of constitutionality unless such adjudication is unavoidable." *Id*. at 241.

Second, "when qualified immunity is asserted at the pleading stage, the precise factual basis for the plaintiff's claim or claims may be hard to identify. Accordingly, several courts have recognized that the two-step inquiry is an uncomfortable exercise where the answer to whether there was a violation may depend on a kaleidoscope of facts not yet fully developed and have suggested that it may be that *Saucier* was not strictly intended to cover this situation. *Id*. at 238-239 (internal quotations and citations omitted). The facts are scarcely developed as they relate to Dickerson, and thus, the court will conduct its inquiry beginning with the second *Saucier* prong, requiring the court to decide "if the defendant's conduct was objectively reasonable in light of the clearly established law at the time of the incident." *Easter*, 467 F.3d at 462. "A law is clearly established if it is sufficiently clear that a reasonable official would understand that what he or she is doing violates that right…. [I]n the light of pre-existing law the unlawfulness must be apparent." *Id*. at 465.

The court now turns to the Eighth and Fourteenth Amendment claims brought pursuant to 42 U.S.C. §1983 against Dickerson. "The State owes the same duty under the Due Process Clause and the Eighth Amendment to provide both pretrial detainees and convicted inmates with

basic human needs, including medical care and protection from harm, during their confinement; and (2) that a state jail official's liability for episodic acts or omissions cannot attach unless the official had subjective knowledge of a substantial risk of serious harm to a pretrial detainee but responded with deliberate indifference to that risk." *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 650 (5th Cir. 1996). The subjective knowledge element requires that the official know of and disregard an excessive risk to inmate health or safety; "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S.Ct. 1970, 1979 (1994).

The reasons for the decedent's confinement are not in the record. However, the parties agree that the decedent was a pre-trial detainee, and thus, the claim is to be treated as one arising under the Fourteenth Amendment, not the Eighth Amendment. *Hare*, 74 F.3d at 639. However, "no constitutionally relevant difference exists between the rights of pretrial detainees and convicted prisoners to be secure in their basic human needs." *Id.* at 647.

In response to the present motion, Anderson has not provided any factual evidence, affidavit, or allegations specifically implicating Dickerson. Specifically, Anderson cites the following: Miss. Code § 19-25-35 (The sheriff "shall take into his custody, and safely keep, in the jail of his county, all persons committed by order of either of said courts…"); Miss. Code § 19-25-69 ("The sheriff shall have charge of the courthouse and jail of his county, of the premises belonging thereto, and of the prisoners in said jail."); and Miss. Code § 19-25-71 ("The sheriff shall be the jailer of his county…"). The court does not consider this authority relevant to the present question because a state statute, even if violated, does not impose strict liability against an official on a constitutional claim. While such authority might be relevant to whether

municipal liability may attach in this case, this court will follow the standards enunciated by the Supreme Court and the Fifth Circuit, not the Mississippi code, in considering whether the Fourteenth Amendment has been violated.

Anderson has provided the details of the decedent's hospital visits, her condition, and the state in which she was found. She has also alleged that at no time did any jail official provide medical care for the decedent while in custody. Finally, the complaint states that "despite requests from other prisoners in the County Jail, the Marshall County Sheriff's office did not contact any health care authorities or conduct a medical evaluation of Princess Anderson". However, these facts fall short of the showing required to hold Dickerson individually liable.

First, the qualified immunity analysis necessarily focuses on the official's conduct, not a *res ipsa loquitor* style of liability imposition based solely on the nature of a claimant's injury. Not only has no evidence been provided on this issue, but the complaint itself only contains threadbare recitals of elements that the court need not credit absent some specificity. For example, the complaint provides that "Kenny Dickerson was deliberately indifferent to the serious medical needs of the decedent, Princess Anderson, and that due to the deliberate indifference decedent failed to receive necessary medical care and as direct proximate cause, or proximate contributing cause, thereby died." This conclusory allegation merely points a finger, but does nothing to apprise the court of the sheriff's *conduct* on which a constitutional violation can be premised.

The subjective knowledge standard enunciated in prison conditions jurisprudence is a very high threshold. In light of this clearly-established law, the court is unable to infer that Dickerson acted unreasonably. Factual allegations have not been provided that would allow Dickerson to draw the inference that the decedent was in serious need of medical attention.

Anderson has not shown what symptoms were displayed, nor when or by whom they were observed. It does not follow from the mere fact that she was subsequently found naked and unconscious in her jail cell that Dickerson would have known of the health risk ultimately causing her death. It might have been the case that the decedent did not exhibit symptoms of the condition causing her death until shortly before her death. The court simply does not have sufficient facts from which it can infer wrongdoing on the part of Dickerson during her incarceration at the county jail.

The court is neither unaware of nor unsympathetic to the procedural and factual quagmire the rigid parameters of the qualified immunity and Eighth Amendment analyses pose for wrongful death plaintiffs. Not only do they lack access to the facts as could be communicated from the decedent herself, but they also are not apprised, absent some discovery, of the goings on within prison walls. This concern, however, does not lighten the weight imposed on plaintiffs facing the qualified immunity defense to a charge of inhumane conditions in a prison.

In sum, the court holds that Anderson has failed to factually allege conduct by Dickerson, beyond conclusory allegations, that would suggest that he acted in any manner other than reasonably in light of clearly established Eighth and Fourteenth Amendment jurisprudence. Dickerson, accordingly, will be dismissed from this lawsuit.

In light of the foregoing, the motion for summary judgment [19] is GRANTED. Accordingly, a separate order shall issue pursuant to Fed. R. Civ. P. 58.

SO ORDERED, this the 24th day of April, 2013.

                                          **/s/ MICHAEL P. MILLS**
                                          **CHIEF JUDGE**
                                          **UNITED STATES DISTRICT COURT**
                                          **NORTHERN DISTRICT OF MISSISSIPPI**