IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

ANGELA ANDERSON, personally,
and on behalf of the wrongful death beneficiaries
of PRINCESS ANDERSON, deceased                                    PLAINTIFF

vs.                                             Civil Action No. 3:12cv92-DMB-SAA

MARSHALL COUNTY, MISSISSIPPI,
BAPTIST MEMORIAL HOSPITAL-DESOTO, INC.                            DEFENDANTS

**MEMORANDUM BRIEF IN SUPPORT OF
BAPTIST MEMORIAL HOSPITAL-DESOTO'S
MOTION TO EXCLUDE
EXPERT TESTIMONY BY DR. THOMAS FOWLKES
ON BEHALF OF THE PLAINTIFF**

COMES NOW Defendant Baptist Memorial Hospital-DeSoto, Inc. ("BMH-DeSoto") and submits to the Court its Memorandum Brief in support of its motion to exclude certain expert testimony against it by Dr. Fowlkes and strike the Plaintiff's designation of him as an expert witness. In support of its motion, BMH-DeSoto would show unto the Court as follows, to wit:

*INTRODUCTION*

1)     The Plaintiff instituted the present action with the filing of her Complaint with this Court on October 15, 2012. A copy of the Complaint is attached hereto as Exhibit "A;"

2)     In her Complaint, the Plaintiff makes federal law claims against the Co-Defendant Marshall County arising under 42 U.S.C. § 1983 related the detention of Princess Anderson at the Marshall County Jail pending an additional medical and mental health evaluation within 48 hours under a court ordered writ of commitement. Additionally, the Plaintiff asserts claims against BMH-DeSoto arising entirely under Mississippi law for medical malpractice in the evaluation and care of Ms. Anderson at the emergency room of BMH-DeSoto and prior to Ms. Anderson's release to law enforcement officials under the terms of that same court-ordered writ;

3) Following the expert designation of Marshall County where it identified Dr. Thomas Fowlkes as an expert witness, the parties scheduled the deposition of Dr. Fowlkes. After the deposition and testimony elicited therein, the Plaintiff filed an untimely and insufficient designation of Dr. Fowlkes as an expert against BMH-DeSoto, long after the Plaintiff's expert designation deadline had run. For that reason, BMH-DeSoto now seeks the exclusion of any testimony by Dr. Fowlkes as a designated expert for the Plaintiff or otherwise outside the scope of his original, timely designation by Marshall County. Moreover, any opinions rendered by Dr. Fowlkes concerning any supposed failure to provide follow up pregnancy care to Princess Anderson should be struck as Princess Anderson never suffered any complications or problems from her pregnancy. As the circumstances of her death were legally unforeseeable from any supposed failure to provide pregnancy care, any claim in that regard fails and Dr. Fowlkes testimony on that point should be excluded;

### *THE PLAINTIFF'S DESIGNATION OF DR. FOWLKES AS AN EXPERT WITNESS IS UNTIMELY, INSUFFICIENT AND SHOULD BE STRUCK*

4) This Court initially established expert designation deadlines of October 18, 2013 for the Plaintiff and November 18, 2013 for the Defendants. Exhibit "B," Case Management Order. The Plaintiff sought, and obtained from the Court, an extension of time to designate experts. Exhibit "C," Order Granting Motion for Extension of Time. The Plaintiff's initial expert witness designation, which was within the Court's deadline, disclosed a single expert witness - Dr. Richard Sobel. Exhibit "D," Plaintiff's Expert Designation;

5) Co-Defendant Marshall County, Mississippi timely designated Dr. Thomas Fowlkes within the briefly extended expert designation deadlines. Marshall County designated

Dr. Fowlkes to address questions related to the Plaintiff's claims against Marshall County and further to criticize the care and treatment of Princess Anderson at the separate hospital facility BMH-Union County in New Albany, Mississippi following her detention at the Marshall County Jail. Exhibit "E," Marshall County's Expert Designation. Marshall County did not designate Dr. Fowlkes to testify regarding any matter related to the care and treatment provided to Princess Anderson at BMH-DeSoto during her emergency room stay on February 7-8, 2011; Id.

6) On January 9, 2014, the parties conducted a portion of the deposition of Dr. Fowlkes. During the deposition, Plaintiff's counsel elicited opinions from Dr. Fowlkes outside of his designation which were critical of the care and treatment provided at BMH-DeSoto but *none* of which were contained within Marshall County's expert disclosure for Dr. Fowlkes. Counsel for both Marshall County as well as the undersigned lodged objections to this line of questioning by Plaintiff's counsel. Exhibit "F," Deposition of Dr. Fowlkes (Part I), pp. 61, 65, 112. These criticisms of BMH-DeSoto during deposition were a complete surprise to BMH-DeSoto, only learning of them during the deposition itself;

7) After the adjournment of the deposition for that day, on January 17, 2014, the Plaintiff submitted to the parties supplemental discovery responses identifying Dr. Fowlkes as an additional expert witness for the Plaintiff. Exhibit "G," Plaintiff's Supplemental Response to BMH-DeSoto's Interrogatories. These supplemental discovery responses - which for the first time designated Dr. Fowlkes as an expert witness for the Plaintiff - came approximately three (3) months after the expiration of the Plaintiff's expert disclosure deadline;

8) Moreover, the supplemental discovery responses themselves did not actually contain specific opinions or the asserted basis of those opinions, but rather only generally

disclosed that Dr. Fowlkes was disclosed to testify that BMH-DeSoto failed to "appropriately test, diagnose and treat" Princess Anderson and disclosed him to testify as to "any and all violations of the standard of care referenced" in the prior deposition of Dr. Fowlkes. Id. Therefore, in addition to being untimely, this supplemental discovery response failed to make an adequate disclosure of anticipated expert testimony pursuant to Rule 26 or to disclose the asserted basis for those opinions. See, e.g., Sobrino-Barrera v. Anderson Shipping Co., 495 Fed. Appx. 430, 433 (5th Cir. Tex. 2012) ("Under Rule 26(a)(2)(B)(i) of the Federal Rules of Civil Procedure, an expert report must contain "a complete statement of all opinions the witness will express and the basis and reasons for them."); Davidson v. Georgia Pacific, LLC, 2014 U.S. Dist. LEXIS 1107 (W.D. La. Jan. 6, 2014) (striking Plaintiff's "gradually developing" and "evolving" expert opinions that did not comply with Rule 26); Retractable Techs., Inc. v. Becton, Dickinson & Co., 2013 U.S. Dist. LEXIS 127732 (E.D. Tex. Sept. 6, 2013) (excluding expert opinion where disclosure simply referred to contents of deposition, noting "[t]his is simply not a fair substitute for the summary required by Rule 26. ").

9) The discovery deadline in this case expired on February 28, 2014. However, the parties agreed to complete specific remaining depositions outside the discovery deadline. There was no agreement, however, that the parties could designate any additional experts or assert any new expert opinions;

10) Dr. Fowlkes' deposition resumed and concluded on March 5, 2014. On March 18, 2014, approximately two weeks *after* Dr. Fowlkes' deposition had concluded and approximately five (5) months after the expiration of the Plaintiff's expert disclosure deadline, the Plaintiff submitted a supplemental disclosure of expert opinions regarding Dr. Fowlkes. This

disclosure should also be struck as untimely, as it was made not only long after the Plaintiff's expert disclosure and discovery deadlines had run but also after the deposition of Dr. Fowlkes was completed. Likewise, the disclosure still failed to contain "a complete statement of all opinions the expert will express and the basis and reasons for them" as required by Rule 26, but rather contained a disjointed mix of individual statements during deposition. For example, while the Plaintiff again summarily noted that it was Dr. Fowlkes opinion that BMH-DeSoto breached the standard of care, it is unclear what he bases this opinion on and what facts he relies upon to support those opinions;

11) As the Plaintiff has disclosed Dr. Fowlkes as an expert witness months after the Plaintiff's expert witness disclosure deadline and well after the discovery deadline, this Court should exclude Dr. Fowlkes as an expert witness for the Plaintiff and should preclude the Plaintiff from eliciting expert testimony on her behalf from Dr. Fowlkes against BMH-DeSoto;

12) The Plaintiff did not seek permission from the Court to amend their expert designation or to file a late expert designation and disclose a new expert. All of the information utilized by Dr. Fowlkes in these "new" opinions against BMH-DeSoto were available to the Plaintiff well before the Plaintiff's expert designation deadline and there is no indication that Plaintiff's counsel was otherwise incapable of securing an expert to render similar opinions in a timely manner. See, e.g., Pratt v. Landings at Barksdale, 2013 U.S. Dist. LEXIS 136818 (W.D. La. Sept. 24, 2013) (noting courts generally reject "untimely supplemental expert testimony where the opinions are based upon information available prior to the deadline for expert disclosures.") (Citing Lampe Berger USA, Inc. v. Scentier, Inc., No. 04-354, 2008 U.S. Dist. LEXIS 60648, 2008 WL 3386716, *2 (M.D. La. Aug. 8, 2008));

5

13) That the Plaintiff titled their submissions "supplemental" discovery responses and "supplemental" expert disclosure should be of no import. As the Fifth Circuit has noted "the purpose of a supplemental report is to supplement - not to extend the expert disclosure deadline." Sierra Club v. Cedar Point Oil Co., 73 F.3d 546, 569 (5th Cir. 1996). Prejudice is evident here, as demonstrated by the months by which the Plaintiff's late disclosure has disrupted the schedules of Court and counsel. See, e.g., Geiserman v. MacDonald, 893 F. 2d 787, 790 (5th Cir. 1990) (citations omitted); see also Williams v. Gonzales, 2005 U.S. Dist. LEXIS 38838, 2005 WL 3447885, at *6 (E.D. Tex. Dec. 14, 2005) ("Disruption of the court's discovery schedule and the opponent's preparation constitutes sufficient prejudice to militate in favor of exclusion of [expert] testimony."). Finally, the importance of this testimony is suspect, as the Plaintiff already had disclosed her desired expert and his opinions by the Court-imposed deadline;

14) BMH-DeSoto requests that this Court strike the Plaintiff's designation of Dr. Fowlkes as an expert and exclude from the evidence in this case any expert opinions offered against BMH-DeSoto by Dr. Fowlkes;

***OPINIONS OF DR. FOWLKES REGARDING
PRINCESS ANDERSON'S PREGNANCY
SHOULD BE EXCLUDED***

15) Should this Court not exclude Dr. Fowlkes' testimony for the reasons set forth above, then BMH-DeSoto requests that the Court exclude Dr. Folwkes' specific opinions regarding pregnancy care. One of the points for which Dr. Fowlkes is designated by the Plaintiff is the contention that Princess Anderson "should have been admitted to the hospital for followup tests related to potential ectopic pregnancy." Exhibit "H," Plaintiff's Supplemental Disclosure

of Expert Opinions. When asked more specifically about this opinion, however, Dr. Fowlkes admitted that the justification for this was that she could potentially develop a pregnancy-related problem. Yet, Princess Anderson never actually developed a pregnancy related medical problem:

> Q: The reason you have that opinion is because [the emergency room physicians] should have followed up about potential problems with her pregnancy as opposed to any other medical problem for that reason?
>
> MR. O'DONNELL: Object to form.
>
> A: The reason she needed to follow up the next day is that's the standard of care for an ectopic pregnancy.
>
> Q: Right. Potential pregnancy related problem?
>
> A: For that situation, absolutely.
>
> Q: That's what I was getting at. As opposed to some other type of medical problem, the reason she needed 48 hour follow up for purposes of that specific opinion is because of potential pregnancy related problems?
>
> A: Potential ectopic pregnancy or suspected ectopic pregnancy.
>
> Q: And, in fact, she did not have an ectopic pregnancy?
>
> A: That is correct.
>
> Q: And she never developed any problems related to her pregnancy?
>
> A: That is correct.

Exhibit "I," Deposition of Dr. Fowlkes (Part II), pp. 14-16.

16) Any opinion that physicians failed to adequately provide follow up or other care to Ms. Anderson based upon her pregnancy or any pregnancy-related condition should be excluded by this Court as it is unsupported by any admissible opinion that the supposed failure to provide adequate follow up care was a foreseeable, proximate cause of Ms. Anderson's death.

BMH-DeSoto has presented a similar argument to the Court in the context of its Motion for Partial Summary Judgment and it is equally applicable here. See, e.g., City of Jackson v. Estate of Stewart, 908 So. 2d 703, 712-713 (Miss. 2005) ("*A defendant is obligated solely to safeguard against reasonable probabilities and is not charged with foreseeing all occurrences, even though such occurrences are within the range of possibility*.") (emphasis added); see also City of Jackson v. Law, 65 So. 3d 821, 834 (Miss. 2011).

17) While it might be reasonably foreseeable that the failure to adequately address a pregnancy-related problem could result in a pregnancy-related complication, nothing of the sort occurred here. Dr. Fowlkes' opinions on this point should be excluded for the same reasons that partial summary judgment is appropriate on any claim based upon a supposed failure to property address Princess Anderson's pregnancy;

WHEREFORE, PREMISES CONSIDERED, BMH-DeSoto respectfully requests that this Court strike the Plaintiff's expert designation of Dr. Thomas Fowlkes and exclude from the evidence in this case any opinions by Dr. Fowlkes which are critical of BMH-DeSoto as well as any other opinions outside his prior designation as an expert for Marshall County, Mississippi.

Respectfully submitted, this the 4th day of April 2014.

                                                BAPTIST MEMORIAL HOSPITAL-DESOTO, INC.


                              BY:    *s/Walter Alan Davis*
                                      WALTER ALAN DAVIS, MSB #9875
                                      waltdavis@dunbardavis.com

Of Counsel:

DUNBAR DAVIS, PLLC
Attorneys at Law
324 Jackson Avenue East
Oxford, MS 38655
(662) 281-0001

**CERTIFICATE OF SERVICE**

    I, Walter Alan Davis, do hereby certify that I have this date served a true and correct copy of the above and foregoing document by electronic mail to:

>Mr. Daniel M. Czamanske, Jr.
>dan@chapman-lewis-swan.com
>*Attorney for Plaintiff*
>
>Mr. Ray Hill
>rhill@claytonodonnell.com
>*Attorney for Defendants Marshall County, MS*
>*and Kenny Dickerson*
>
>Mr. David D. O'Donnell
>dodonnell@claytonodonnell.com
>*Attorney for Defendants Marshall County, MS*
>*and Kenny Dickerson*

This, the 4th day of April, 2014.

                                        *s/Walter Alan Davis*_____
                                        WALTER ALAN DAVIS