**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION**

ANGELA ANDERSON, personally,
and on behalf of the wrongful death beneficiaries
of PRINCESS ANDERSON, deceased					**PLAINTIFF**

vs.							Civil Action No. 3:18cv92-MPM-SAA

MARSHALL COUNTY, MISSISSIPPI,
KENNY DICKERSON and
BAPTIST MEMORIAL HOSPITAL-DESOTO, INC.			**DEFENDANTS**

**MEMORANDUM OF LAW IN SUPPORT OF RENEWED MOTION
FOR SUMMARY JUDGMENT BY DEFENDANT
BAPTIST MEMORIAL HOSPITAL-DESOTO, INC.**

COMES NOW the Defendant Baptist Memorial Hospital-DeSoto, Inc. ("BMH-DeSoto") and files this memorandum of law in support of its renewed motion for summary judgment. BMH-DeSoto would show unto the Court as follows, to wit:

*INTRODUCTION*

1. The Plaintiff's Complaint sets forth claims against BMH-DeSoto that are based in negligence under Mississippi law and arise out of the decision to release Princess Anderson to law enforcement for involuntary detention under the Mississippi involuntary commitment procedures set forth in MISS. CODE ANN. §§ 41-21-61, et seq. This Court should grant summary judgment as to the Plaintiff's claims against BMH-DeSoto based upon statutory immunity provided by Mississippi law under the provisions of MISS. CODE ANN. § 41-21-105. Alternatively, BMH-DeSoto is entitled to summary judgment on Plaintiff's claims arising out of and related to the decision by Emergency Room physician Dr. Thomas Olmstead to discharge Princess Anderson into the care and custody of law enforcement;

## FACTUAL BACKGROUND

2. Princess Andserson presented to the Emergency Room at BMH-DeSoto on February 7, 2011. After evaluation and testing of both her medical condition and mental state, it was determined that she was in need of further evaluation and that she was a danger to herself and to her unborn child. Exhibit "A," Selected BMH-DeSoto Medical Records, p. 35. The involuntary commitment process set forth in MISS. CODE ANN. §§ 41-21-61, *et seq.* was implemented. Id. As part of the decision to release Princess Anderson into the care and custody of law enforcement for detention to await further medical and mental health evaluation within forty-eight (48) hours, Emergency Room Physician Dr. Thomas Olmstead determined that Princess Anderson was "medically cleared and appropriate for transport" and he executed a required, commitment-related form to that effect. Id. at 52-56 (signature on page 56). By law, following the issuance of a writ of commitment, Princess Anderson was to be given a pre-screening evaluation and "a mental examination and physical evaluation . . . within (48) hours after the order for examination" by two medical professionals. Miss. Code Ann. § 41-21-69;

3. Upon leaving BMH-DeSoto at approximately 11:45 a.m. on February 8 2011, Princess Anderson was noted to be much improved from her prior behavior and was cooperative with staff. Id. at p. 31, 41. She had breakfast and nurses noted no acute changes from the previous observations that she had improved. She was conscious and while still anxious, left with law enforcement officers after nursing

        staff gave her belongings to her mother, who had been with Princess Anderson for several hours. Id.;

4. The following day, on February 9, 2011, Communicare employee Debra Shelton arrived and performed the pre-screening evaluation. Ms. Shelton found Princess Anderson to be unresponsive and non-communicative, recommending "immediate transfer to hospital . . . hospitalization for psychosis. And watched carefully until hospitalized." Exhibit "B," Department of Mental Health - Pre-Evaluation Screening Form. Despite her recommendation, Princess Anderson remained in the Marshall County Jail;

5. Princess Anderson was again found unresponsive on the floor of her jail cell, this time by her mother on February 11, 2011. Despite medical treatment, she did not survive and, according to the Plaintiff's expert witness Dr. Sobel, died from failing to get adequate fluids over the course of her time in detention. Exhibit "C," Deposition of Dr. Sobel, pp. 102 ("This is the result of progressive water deprivation over the course of days.");

6. The Plaintiff has asserted specific claims against BMH-DeSoto based on Dr. Olmstead's decision to release Princess Anderson into the care of law enforcement for detention as part of the civil commitment process. See, e.g., Exhibit "C," Deposition of Dr. Sobel, pp. 28 ("She should have never been sent to jail."); p. 36 ("This is not a patient that is medically clear for jail.");

## DISCUSSION

7. MISS. CODE ANN. § 41-21-105 provides immunity to BMH-DeSoto against the claims brought by Plaintiff against it, based on actions taken in good faith in connection with the involuntary commitment process set forth in MISS. CODE ANN. § 41-21-61, et seq. Immunized actions specifically include those actions taken in good faith "in connection with the preparation or execution of applications," "findings, determinations and opinions of physicians" as well as "examination; treatment; emergency treatment; detention or discharge of an individual." MISS. CODE ANN. § 41-21-105;

8. BMH-DeSoto previously filed a motion to dismiss or for summary judgment with this Court on the issue of statutory immunity. By order dated August 16, 2013, this Court denied the motion, stating "[w]hile it is not clear if plaintiff will be able to sustain her burden of proof in this case, the court does conclude that she has submitted sufficient evidence to establish genuine fact issues regarding the potential liability of BMH-D in this case." Exhibit "D," Order On BMH-DeSoto's Motion to Dismiss or for Summary Judgment. In making its decision, the Court also noted that under Mississippi law, this statutory immunity "intends to immunize good faith decisions taken during the actual commitment process" but does not "immunize custodial care and conduct after the commitment decision is made." Id. (citing Carrington v. Methodist Medical Center, 740 So. 2d 827, 829 (Miss. 1999));

9. Since the entry of the Court's order of August 16, 2013, the parties have concluded discovery in this matter and the available factual and expert support for

the Plaintiff's claims is now established. While the Plaintiff's expert proof does allege some challenges to decisions made in the evaluation and treatment of Princess Anderson, it is clear that the Plaintiff's claims all hinge upon Dr. Olmstead's determination as part of the civil commitment process that Princess Anderson was "medically cleared and appropriate for transport" for a detention of up to forty eight (48) hours pending additional medical and mental health evaluation. Exhibit "C," Deposition of Dr. Sobel, pp. 28 ("She should have never been sent to jail."); p. 36 ("This is not a patient that is medically clear for jail."); Were it not for the decision to send Princess Anderson for detention under the Writ of Commitment, the Plaintiff claims, Princess Anderson would not have died. Id. at 52 ("She died of compilations of being in a jail cell . . ."); at 102 ("This is the result of progressive water deprivation over the course of days.");

10. Dr. Olmstead's determination that Ms. Anderson was medically stable for discharge into the custody of law enforcement for detention under the court-ordered Writ of Commitment was made in good faith and as an integral part of the civil commitment process. There is no allegation contained in the pleadings of bad faith and there is no evidence in this matter of bad faith on the part of Dr. Olmstead. See, e.g., Wright v. Weaver, 516 Fed. Appx. 306, 308 (5th Cir. Tex. 2013) ("When the non-moving party . . . bears the burden of proof on a claim on which summary judgment is sought, the movant . . . may discharge its burden by showing that there is an absence of evidence to support the nonmovant's case. ");

11. Moreover, the specific decision to release Princess Anderson to law enforcement

5

for detention under the civil commitment process clearly falls within the plain language of the immunity statute as it involves:

A. **Action "in connection with the preparation or execution of applications."** Here, Princess Anderson could not have been released to the custody of law enforcement without a specific written finding of Dr. Olmstead that she was cleared for discharge. That specific written finding is contained on a form prepared by a Lakeside Hospital evaluator for use in the civil commitment process. Exhibit "A," Selected BMH-DeSoto Medical Records, p. 52-56;

B. **"Findings, determinations and opinions of physicians."** There is no dispute that Dr. Olmstead is a physician and that his decision to release Princess Anderson into the custody of law enforcement for detention was a "finding" or "determination" based upon his medical opinions;

C. **"Examination; treatment; emergency treatment."** Again, it is beyond cavil that all of the Plaintiff's claims arise out of or are related to Princess Anderson's examination, treatment and emergency treatment which directly led to her detention under a court-ordered Writ of Commitment;

D. **"Detention or discharge of an individual."** As the testimony of the Plaintiff's retained expert Dr. Stokes makes clear, the center of the Plaintiff's claims in this case about the cause of death was Dr. Olmstead's decision to release Princess Anderson for detention under the Writ of Commitment. Exhibit "C," Deposition of Dr. Sobel, p. 52 ("She died of

6

compilations of being in a jail cell . . . "); at 102 ("This is the result of progressive water deprivation over the course of days.");

12. BMH-DeSoto appreciates the contours of the Mississippi Supreme Court's interpretation of Miss. Code Ann. § 41-21-105 as not providing immunity for improper *custodial* care. Carrington v. Methodist Med. Ctr., Inc. 740 So. 2d 827 (Miss. 1999). Yet, while that is precisely the nature of claims asserted against co-defendant Marshall County (within the context of 42 U.S.C. 1983), improper custodial care is not the basis of the Plaintiff's against BMH-DeSoto. Rather, the Plaintiff claims that Princess Anderson should not have been released into the care of law enforcement for her detention in the first place - in other words a "wrongful commitment." Specifically, the Plaintiff challenges the release decision of Dr. Olmstead - an individual involved in making the commitment decision as contemplated by Carrington. Id. at 829;

13. Alternatively, should this Court determine that there are claims available to the Plaintiff regarding specific claims for failure to provide adequate care and treatment, BMH-DeSoto requests that this Court grant partial summary judgment on the immunity issue as to any claim arising out of or related to Dr. Olmstead's specific decision to discharge Princess Anderson into the custody of law enforcement;

### *CONCLUSION*

14. BMH-DeSoto requests that this Court grant summary judgment as to the claims of the Plaintiff against it based upon statutory immunity. Alternatively, BMH-

7

DeSoto requests that this Court grant summary judgment in its favor on the issue of immunity for Dr. Olmstead's decision to discharge Princess Anderson from BMH-DeSoto and into the care and custody of law enforcement under the writ of commitment. There are no genuine issues of material fact as to these matters and BMH-DeSoto is entitled to the entry of a judgment as a matter of law

Respectfully submitted, this the 4th day of April 2014.

                              BAPTIST MEMORIAL HOSPITAL-DESOTO, INC.

                              BY:    __*s/Walter Alan Davis*_____
                                         WALTER ALAN DAVIS, MSB #9875
                                         waltdavis@dunbardavis.com

Of Counsel:

DUNBAR DAVIS, PLLC
Attorneys at Law
324 Jackson Avenue East
Oxford, MS 38655
(662) 281-0001

**CERTIFICATE OF SERVICE**

  I, Walter Alan Davis, do hereby certify that I have this date served a true and correct copy of the above and foregoing document by electronic mail to:

>Mr. Daniel M. Czamanske, Jr.
>dan@chapman-lewis-swan.com
>*Attorney for Plaintiff*
>
>Mr. Ray Hill
>rhill@claytonodonnell.com
>*Attorney for Defendants Marshall County, MS*
>*and Kenny Dickerson*
>
>Mr. David D. O'Donnell
>dodonnell@claytonodonnell.com
>*Attorney for Defendants Marshall County, MS*
>*and Kenny Dickerson*

  This, the 4th day of April 2014.

>    *s/Walter Alan Davis*
>    WALTER ALAN DAVIS