IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

ANGELA ANDERSON, personally,
and on behalf of the wrongful death beneficiaries
of PRINCESS ANDERSON, deceased                                     PLAINTIFF

vs.                                         Civil Action No. 3:18cv92-MPM-SAA

MARSHALL COUNTY, MISSISSIPPI,
KENNY DICKERSON and
BAPTIST MEMORIAL HOSPITAL-DESOTO, INC.                              DEFENDANTS

**REBUTTAL BRIEF IN SUPPORT OF RENEWED MOTION
FOR SUMMARY JUDGMENT BY DEFENDANT
BAPTIST MEMORIAL HOSPITAL-DESOTO, INC.**

COMES NOW the Defendant Baptist Memorial Hospital-DeSoto, Inc. ("BMH-DeSoto") and files its Rebuttal Brief in support of its renewed motion for summary judgment. BMH-DeSoto would show unto the Court as follows, to wit:

1. **INTRODUCTION.** In response to the present motion, the Plaintiff contends that Dr. Olmstead's medical conclusion that Princess Anderson was medically stable for discharge into the care and custody of law enforcement for further medical and mental health evaluation under the statutory civil commitment process is not an equivalent to a commitment decision by a Mississippi Chancery Judge. That question is wholly irrelevant insofar as the immunity protections given by the plain language of Miss. Code Ann. § 41-21-105 are not limited to simply a Judge's ultimate decision on commitment, but broadly protects "all persons" acting in connection with a litany of activities "in connection with" the commitment process - most notably here the "opinions of physicians" and related "examination; treatment; emergency treatment" as well as the "detention" of a

person for further evaluation. At their core, it is Princess Anderson's "detention" - as opposed to hospital admission that the Plaintiff claims should have occurred - that serves as the essential basis for all of the Plaintiff's claims. Dr. Olmstead's decision that Princess Anderson was medically stable for detention by law enforcement pending further evaluation and treatment was an essential component of the commitment process and Dr. Olmstead's conduct falls squarely into the activities expressly and plainly spelled out and immunized by statute. Further, the Plaintiff contends that the timing of conduct is not relevant here, despite the fact that the interpretive caselaw makes a clear distinction between activities taken "in connection with" a detention decision *prior* to being made and the standard imposed for the custody of detainees *after* a commitment decision has been made. Regardless of the Plaintiff's arguments, the plain and unambiguous language of Miss. Code Ann. § 41-21-105 precludes the Plaintiff's claims in this case and summary judgment is appropriate in favor of BMH-DeSoto on all claims against it;

2. **THE PLAIN STATUTORY LANGUAGE PROVIDES IMMUNITY IN THIS CASE.**

    *§ 41-21-105. Civil and criminal immunity*

    > (1) All persons acting in good faith *in connection with* the preparation or execution of applications, affidavits, certificates or other documents; apprehension; findings; determinations; opinions of physicians and psychologists; transportation; examination; treatment; emergency treatment; detention or discharge of an individual, under the provisions of Sections 41-21-61 through 41-21-107, shall incur no liability, civil or criminal, for such acts.

Miss. Code Ann. § 41-21-105(1) (emphasis added). As the Court is already aware, when sitting in diversity and interpreting state statutes under Mississippi law, the Court should look first to the plain, unambiguous language of the statute itself:

> To determine legislative intent, the Court first looks to the language of the statute. Pinkton v. State, 481 So. 2d 306, 309 (Miss. 1992). If the words of a statute are clear and unambiguous, the Court applies the plain meaning of the statute and refrains from using principles of statutory construction. Clark v. State ex rel. Miss. State Med. Ass'n, 381 So. 2d 1046, 1048 (Miss. 1980); see also Gilmer v. State, 955 So. 2d 829, 833 (Miss. 2007).

Lawson v. Honeywell Int'l, Inc., 75 So. 3d 1024, 1027 (Miss. 2011); see also Liberty Mut. Ins. Co. v. Shoemake, 111 So. 3d 1207, 1210 (Miss. 2013) ("Because the right [in question] "exists by virtue of statute and must rise or fall strictly as a matter of statutory interpretation," we must first look to the plain language [of the statute.]");

3. Here, under the plain, unambiguous language of the statute as already set forth in BMH-DeSoto's initial motion, Dr. Olmstead's conduct in executing a portion of the commitment application about Princess Anderson's stability for discharge into the custody of law enforcement pending additional evaluation - as well as the medical stability determination itself - falls squarely within the scope of statutory immunity. Here, taken to its essential core, the Plaintiff's claim is that Princess Anderson should not have been sent to detention at the Marshall County Jail. Here, clearly "in connection with" the commitment proceedings and Princess Anderson's detention, Dr. Olmstead made a specific good faith finding that in his

3

medical judgment, "this patient is medically cleared and appropriate for transport to jail." Exhibit "A," Selected BMH-DeSoto Medical Record, Lakeside Commitment Application Paperwork, p. 56. It is axiomatic that all of Dr. Olmstead's actions regarding the decision to medically discharge Princess Anderson into jail detention were made "in connection with" her detention and therefore is protected by Mississippi's immunity statute;

4. **INTERPRETIVE CASELAW SUPPORTS IMMUNITY IN THIS CASE.**

In addition to falling within the plain, unambiguous language of statutory immunity, the caselaw interpreting this immunity statute also supports its application here. In Bass v. Parkwood Hospital, the Court determined that the question of good faith was the sole question precluding summary judgment for claims made against a non-physician mental health evaluator who reported conduct and statements of the person later detained for evaluation, but not ultimately committed. Bass v. Parkwood Hosp., 180 F.3d 234, 246 (5th Cir. Miss. 1999) (acknowledging application of immunity statute but denying summary judgment where Plaintiff "has specifically alleged that [the Defendant] acted in bad faith."). Under the facts in Bass, once the Plaintiff was given a mental health evaluation, the ultimate finding was that the Plaintiff was not in need of mental health treatment and they were released. Id. at 239. Under the facts of this case, just as in Bass, the conduct of Dr. Olmstead occurred prior to any actual mental health evaluation and was part of necessary pre-cursor activity before detention pending actual mental health evaluation. More importantly,

there is absolutely no allegation or evidence of bad faith on the part of Dr. Olmstead to preclude summary judgment here;

5. In <u>Tebo v. Tebo</u>, the Court reviewed the statute in the context of claims made against physicians who evaluated the Plaintiff and filed a report recommending inpatient psychiatric treatment. Notably, that recommendation was never ruled upon by the Chancellor as the commitment proceedings were dismissed before the Court made a final decision. <u>Tebo v. Tebo</u>, 550 F.3d 492, 496 (5th Cir. 2008). Despite that fact, the Court found that the physicians were entitled to immunity from negligence claims because "negligence is at the core of what the statute immunizes." <u>Id.</u> at 506. Similar to the facts in both this case and in <u>Bass</u>, there was never an actual civil commitment order from a Chancellor issued;

6. In both of these decisions, as was the case here, the Courts found that even though there was never an actual commitment decision, the Defendants who engaged in precursor activity in connection with a commitment proceeding triggered the application of the immunity statute. Another decision has determined, however, that once a commitment decision is made, the standards of custodial care fall outside the scope of the statute. <u>Carrington v. Methodist Medical Center</u>, 740 So. 2d 827, 829 (Miss. 1999);

7. In <u>Carrington</u>, the Mississippi Supreme Court determined that the immunity statute did not apply to negligent custodial care ***following*** a commitment decision and "intends to immunize good faith actions taken during the actual commitment process." <u>Id.</u> at 829. The <u>Tebo</u> court, distinguishing <u>Carrington</u>, noted "It is

precisely the making of the commitment decision that was at issue here -- not, as in *Carrington*, the failure to prevent a suicide occurring after a commitment took place." Tebo v. Tebo, 550 F.3d 492, 506 (5th Cir. Miss. 2008). The Plaintiff construes this to literally limit immunity to the actual commitment decision by the Judge, despite the fact that immunity was given in Tebo to physicians without any commitment decision ever having been made. Rather, the lesson from Tebo is to consider, as noted by Carrington, whether the challenged conduct was "taken during the actual commitment process." Carrington, 740 So. 2d at 829. Here, that process began when physicians at BMH-DeSoto felt that Princess Anderson should be evaluated for involuntary psychiatric admission. Exhibit "A," Selected BMH-DeSoto Medical Records, p. 35 ("Plans were made for admission to a psych facility, she refused voluntary admission and, at this point, it was felt that she did require admission. Plans were made to have her reevaluated for an involuntary admission."). As an essential part of the initial mental health screening by an employee of Lakeside Hospital and of the commitment application process itself, Dr. Olmstead determined Princess Anderson was "medically cleared and appropriate for transport to jail." Exhibit "A," Selected BMH-DeSoto Medical Record, Lakeside Commitment Application Paperwork, p. 56;

8. The Plaintiff, in her argument, contends that this language should be strictly construed and immunity limited to the actual, ultimate commitment decision. This contrary to the clear language that extends immunity to those who act "in

6

connection with" a litany of activities as part of the civil commitment process. Further, the Bass and Tebo decisions involved situations where a commitment decision was never even made. Rather, as protected by statute, those decisions involved "person[s] acting in good faith *in connection with* the preparation or execution of applications, affidavits, certificates or other documents; apprehension; findings; determinations; opinions of physicians and psychologists; transportation; examination; treatment; emergency treatment; detention or discharge of an individual" under the plain, unambiguous meaning of the immunity statute;

9. Here, Dr. Olmstead's conduct was clearly "in connection with" multiple listed activities under the civil commitment process. Indeed, his decision that Princess Anderson was medically stable for discharge and detention pending further evaluation was part of the application process itself - the very first protected activity listed in the statute. Exhibit "A," Selected BMH-DeSoto Medical Records, p. 52-56. Moreover, his conduct in medically clearing Princess Anderson for further evaluation under the commitment process is clearly "in connection with" the commitment proceeding itself;

10. **CONCLUSION.** BMH-DeSoto requests that this Court grant summary judgment as to the claims of the Plaintiff against it based upon statutory immunity. Alternatively, BMH-DeSoto requests that this Court grant summary judgment in its favor on the issue of immunity for Dr. Olmstead's decision to discharge Princess Anderson from BMH-DeSoto and into the care and custody of

    law enforcement under the writ of commitment.   There are no genuine issues of

    material fact as to these matters and BMH-DeSoto is entitled to the entry of a

    judgment as a matter of law

Respectfully submitted, this the 30th day of April 2014.

                      BAPTIST MEMORIAL HOSPITAL-DESOTO, INC.


                        BY:    *s/Walter Alan Davis*
                        WALTER ALAN DAVIS, MSB #9875
                        waltdavis@dunbardavis.com


Of Counsel:

DUNBAR DAVIS, PLLC
Attorneys at Law
324 Jackson Avenue East
Oxford, MS 38655
(662) 281-0001

## **CERTIFICATE OF SERVICE**

      I, Walter Alan Davis, do hereby certify that I have this date served a true and correct copy of the above and foregoing document by electronic mail to:

      Mr. Daniel M. Czamanske, Jr.
      dan@chapman-lewis-swan.com
      *Attorney for Plaintiff*

      Mr. Ray Hill
      rhill@claytonodonnell.com
      *Attorney for Defendants Marshall County, MS*
      *and Kenny Dickerson*

      Mr. David D. O'Donnell
      dodonnell@claytonodonnell.com
      *Attorney for Defendants Marshall County, MS*
      *and Kenny Dickerson*

This, the 30th day of April, 2014.

                                *s/Walter Alan Davis*
                                WALTER ALAN DAVIS