IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

ANGELA ANDERSON, Personally,
and on behalf of the WRONGFUL DEATH BENEFICIARIES
of PRINCESS ANDERSON, Deceased                      PLAINTIFF

VS.                      CIVIL ACTION NO. 3:12cv92-MPM-SAA

MARSHALL COUNTY, MISSISSIPPI, and
BAPTIST MEMORIAL HOSPITAL – DESOTO                      DEFENDANTS

**DEFENDANT MARSHALL COUNTY, MISSISSIPPI'S REPLY TO PLAINTIFF'S RESPONSE IN OPPOSITIONTO MOTION FOR SUMMARY JUDGMENT**

COMES NOW, Defendant Marshall County, Mississippi, by and through counsel and files its Reply to Plaintiff's Response in Opposition to Marshall County's Motion for Summary Judgment, and would show stated in support thereof as follows:

### I. INTRODUCTION

The record evidence and related arguments presented in Anderson's reply to the present motion do not establish a legally viable section 1983 "failure to train" case under the deliberate indifference standard against Marshall County as recently explained by the Supreme Court in Connick v. Thompson, 131 S.Ct. 1350 (2011). The Court in Connick made clear that in order to prove "deliberate indifference" on the part of a governmental entity a plaintiff must show that the entity was "on notice that absent additional specified training, it was 'highly predictable'" that the particular kind of constitutional deprivation suffered by the plaintiff would occur. In such cases, the section 1983 plaintiff must show, generally with evidence of similar prior occurrences, that it was "so predictable that the failure to train" amounted to a conscious disregard of a plaintiff's need for immediate medical care. Instead, Anderson fails to articulate the appropriate section 1983 municipal liability standard in her response, fails to identify the nature of the

specific training the County failed to provide its jailers and fails to explain how the alleged failure to provide the specific training was the "moving force" of the constitutional deprivation at issue.

## II. ARGUMENT

### A. County policy was not "deliberately indifferent" to Anderson's serious medical needs

As consistently held by the Fifth Circuit and recent Supreme Court decisions, the standard of Section 1983 municipal liability under a "failure to train" rationale requires a plaintiff to prove that the relevant policymaking official evinced deliberate indifference to the serious medical needs of jail inmates by adopting an inadequate training program which caused the jail staff to deprive the plaintiff of her right to medical care. Pineda v. City of Houston, 291 F.3d 325, 331 (5th Cir. 2002). "Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." Porter v. Epps, 659 F.3d 440, 446 (5th Cir. 2011). "A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference." Id. at 447. See also Connick v. Thompson, 131 S. Ct. 1350, 1360 (2011); Huff v Refugio County, 2013 U.S. Dist. LEXIS 146204 (S.D. Tex 2013) (no deliberate indifference in failure to train where plaintiff did not allege any prior specific instances of similar violations). Deliberate indifference is "more than mere negligence in failing to supply medical treatment." Gibbs v. Grimmette, 254 F.3d 545, 548 (5th Cir. 2001); see also Estate of Laura Allison v. Wansley, 524 Fed. Appx 963, 970 (5th Cir 2013) (deliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a

substantial risk of serious harm; deliberate indifference is an extremely high standard to meet). In its most recent pronouncement on the legal viability of "failure to train" claims under Section 1983, the Supreme Court in Connick v. Thompson addressed the nature of the proof required to demonstrate a policy's "deliberate indifference," holding that the proof must show that the responsible policymaking official understood that it was "highly predictable" that the kind of constitutional violation at issue would continue to occur "absent additional specified training," that is, that it was "so predictable" that failing to train in a specific manner amounted to a "conscious disregard" to the particular constitutional right of which the plaintiff was ultimately deprived. Connick, 131 S. Ct. at 1365. Again, such proof generally requires that a plaintiff show a pattern of prior misbehavior by untrained employees because "without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." Porter v. Epps, 659 F.3d 440, 447 (5th Cir. 2011). Further, proof of a municipality's "deliberate indifference" cannot be based on the opinion of an expert witness. See Conner v. Travis County, 209 F.3d 794, 798 (5th Cir. 2000).

In our case, Anderson cannot point to any prior deprivations of medical care of any kind, let alone deprivations "similar" to the kind allegedly experienced by the decedent. Accordingly, under the liability standards generally applicable to failure to train claims, Anderson's claim against Marshall County fails as a matter of law.

Although it is not articulated in her brief, Anderson seems to suggest that the "single incident" exception applies to our circumstances. The Fifth Circuit has consistently acknowledged its general "wariness" of finding municipal liability on the basis of a single

3

incident of a failure to train. See Valle v. City of Houston, 613 F.3d 536, 549 (5th Cir. 2010). According to the Fifth Circuit in Valle, the single incident exception is "extremely narrow" and applies only where a plaintiff can demonstrate that the "highly predictable" consequences of a failure to train would result in the specific injury suffered and the failure to train represented the moving force behind the particular constitutional violation at issue. Valle, 613 F.3d at 549. See also Roberts v. City of Shreveport, 397 F.3d 287, 295 (5th Cir. 2005) (observing that "this circuit, in conformity with the Supreme Court jurisprudence, has been highly reluctant to permit the single incident exception to swallow the rule that forbids mayor respondeat superior liability") Indeed, within the context of the "single incident" exception cases, the Fifth Circuit has made the practical observation that if the failure to train was "so likely" to result in the violation of constitutional rights, the plaintiff would be able to identify other instances of harm from the failure to train. See Connor v. Travis County, 209 F.3d 794, 797 (5th Cir. 2000); see also Cozzo v. Tangipohoa Parish, 279 F.3d 273, 288 (5th Cir. 2002) (absence of prior complaints of similar constitutional violations as result of a failure to train suggests that inadequacy of training was not "obvious and obviously likely to result in a constitutional violation.")

In its proper factual perspective, the record evidence and even plaintiff's argument do not suggest that the relevant Marshall County policies fail to provide an adequate degree of medical care to its jail inmates. That much is clear upon a review of the relevant Marshall County jail policies (and the testimony of jail staff and the jail administrator) which requires the following: (1) medical screening upon intake at the jail with a requirement that the "jailers are to refuse admission" if screening or visual inspection shows apparent medical need until the inmate's cleared by a physician or a hospital (Marshall County jail policy,

4

section I, 2.5; exhibit K), (2) a daily medical call procedure for nonemergency conditions (Marshall County jail policy, section IV, 2.1), (3) the requirement that jailers are to provide first aid in emergency situations and (4) a requirement that the jailer shall notify dispatcher to call for an ambulance upon emergency need (section IV, 2.2). In addition, as set forth in Marshall County's initial motion, the uncontroverted proof shows that each jailer was certified in accordance with the State of Mississippi Department of Corrections certification requirements (which included training on the handling of inmate medical requests and needs) and each jailer was trained in CPR and first aid. Finally, all jailers were trained with regard to the requirements set forth in the jail policy and procedure manual and they were specifically trained to provide medical care on a routine or emergency basis, upon apparent need or inmate request and to routinely check on mental detainees. As to Anderson, in particular, Marshall County would reiterate the facts set forth in its initial motion as to the care and attention provided Anderson during her three day stay at the jail. Ultimately, the proof contradicts any notion that jail staff were "deliberately indifferent" to Anderson's reasonably apparent medical and psychological needs. More to the point, however, although Anderson complains that jail staff unnecessarily "delayed" Princess Anderson's medical care by health professionals by allegedly waiting until February 11 to transport her to the local hospital for evaluation and treatment (even though staff scheduled the decedent for a medical and psychological evaluation for February 10), at most these allegations attempt to make a case for "negligence" against individual jail staff but do not implicate the relevant Marshall County jail medical care policies. See Wansley, 524 Fed. Appx. 963 (jailers' monitoring of decedent and their attempts to rouse her to speak to her husband to take her medication suggest that they did not subjectively intend to harm the decedent; even if steps were

5

ineffectual, they did not demonstrate deliberate indifference). In <u>Wansley</u>, the plaintiff alleged that the jail medical care policy was "deliberately indifferent" because (1) no medical staff was on site at the jail at night, (2) decisions about whether to contact medical personnel was left to the discretion of the individual jailers, (3) most of the jailers were untrained in CPR and in basic life saving measures, (4) there were three deaths at the jail within the year preceding the decedent's death and (5) no jailers were disciplined regarding the decedent's death. The court held that the proof did not demonstrate that the jail policies evinced deliberate indifference or demonstrated an obvious need for additional training because the policy was to obtain medical care for any inmate who demonstrated need and that the jailers were trained to seek medical care for inmates when needed. Id. at 973. <u>See</u> <u>also</u> <u>Vasquez v. Jim Wells County</u>, 2006 U.S. Dist. LEXIS 58855 (S.D. Tex. 2006) (although the jail was not staffed by medical professionals, county's jail medical care policy did not evince deliberate indifference to inmate medical care where policy provided initial medical screening, immediate care whenever "inmate fell ill or was seeking medical attention", jailers were instructed to report any illness or injury immediately to supervisor and to call an ambulance in case of emergency); <u>Clyce v. Hunt County</u>, 515 Fed. Appx. 319, 325 (5th Cir. 2013) (rejecting juvenile's "failure to train" claim, failure to have on-site medical care provider is not itself unconstitutional and does not evince deliberate indifference); <u>Boston v. Lafayette County</u>, 743 F.Supp. 462 (N.D. Miss. 1990).

Further, the Fifth Circuit has consistently held that a plaintiff must specifically identify the nature of the training which has not been provided and which the policymaking official deliberately disregarded. See <u>Roberts v. City of Shreveport</u>, 397 F.3d 287, 293 (5th Cir. 2005)

see also Benevides v. County of Wilson, 955 F.2d 968, 973 (5th Cir. 1992) (for liability to attach on an inadequate training claim, a plaintiff must allege with specificity how a particular training program is defective). In this regard, it does not "suffice to prove that an injury or accident could have been avoided if an officer had had better or more training, sufficient to equip him to avoid the particular injury causing conduct." City of Canton v. Harris, 489 U.S. 378, 391 (1989). In our case, Anderson impliedly contends that jail staff should have been trained to recognize the symptomology of the medically complex conditions ultimately diagnosed by treating physicians at Baptist Memorial Hospital–Union County, even though Princess Anderson's behavior while at the jail was viewed by jail staff (and treating physicians at Baptist Memorial Hospital–De Soto) as simply consistent with a psychotic – not medical – condition for which active medical care was not needed (an observation verified by Debra Shelton, the Communicare staff psychologist who visited Anderson on February 9, contrary to plaintiff's characterization of Shelton's testimony, Shelton did not believe that Anderson needed immediate medical care, only psychological care). Although, as Anderson argues, Princess Anderson was actually suffering from rhabdomyolysis, hypernatremia and related conditions before her discharge into the care and custody of Marshall County by BMH–De Soto physicians, the obvious point is that trained medical personnel did not detect these conditions and it is unreasonable to suggest that jail staff should have been trained to detect otherwise and the failure to so train constituted deliberate indifference.

Finally, Anderson cannot surmount section 1983's proximate cause requirement which puts Anderson to the task of demonstrating that a particular "training inadequacy" was the "but for" cause of any alleged denial of medical care. Logically, Anderson's contention that jail

7

staff "ignored" inmate demands that Princess Anderson be provided medical care for a condition which the inmates regarded as "obvious" cannot be squared with the suggestion that the denial of medical care was result of a "failure to train." See Clyce, 515 Fed. Appx. at 322. The fact is, jail staff was adequately trained, jail staff was not subjectively deliberately indifferent, the applicable jail policies and procedures regarding medical care were not deliberately indifferent in the sense that additional training was obviously needed and the failure to provide additional training was virtually certain to result in the denial of medical care in Anderson's circumstance.

### III. CONCLUSION

Based upon the foregoing, Defendant Marshall County respectfully requests this Court grant the present motion and enter a judgment in favor of Marshall County on all issues and award the defendant its costs incurred in the defense of this matter.

Respectfully submitted,

MARSHALL COUNTY, MISSISSIPPI

*s/ David D. O'Donnell*
**DAVID D. O'DONNELL, MSB# 3912**
dodonnell@claytonodonnell.com

Of Counsel:
CLAYTON O'DONNELL, PLLC
1300 Access Road, Suite 200
P.O. Drawer 676
Oxford, MS 38655
Telephone: (662) 234-0900
Facsimile: (662) 234-3557

8

## **CERTIFICATE OF SERVICE**

I, David D. O'Donnell, hereby certify that I electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to the following:

Daniel M. Czamanske, Jr.
Chapman Lewis & Swan
P. O. Box 428
Clarksdale, MS 38614
dan@chapman-lewis-swan.com
*Attorney for Plaintiff*

Walter Alan Davis
Dunbar & Associates
324 Jackson Avenue East
Oxford, MS 38655
kembry@dunbardavis.com
*Attorney for Baptist Memorial Hospital – DeSoto, Inc.*

This the 9th day of May, 2014.

*s/ David D. O'Donnell*
**DAVID D. O'DONNELL, MSB# 3912**
dodonnell@claytonodonnell.com