**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION**

**ANGELA ANDERSON,** **PLAINTIFF**
*personally and on behalf of the wrongful death
beneficiaries of Princess Anderson, deceased*

**V.** **NO. 3:12-CV-92-DMB-SAA**

**MARSHALL COUNTY, MISSISSIPPI, AND
BAPTIST MEMORIAL HOSPITAL – DESOTO** **DEFENDANTS**

**MEMORANDUM OPINION AND ORDER**

Plaintiff Angela Anderson filed this wrongful death lawsuit on behalf of herself and her deceased 22-year-old mentally ill daughter, Princess Anderson, for constitutional violations Princess Anderson allegedly suffered while detained at the Marshall County Jail and for inadequate medical treatment she allegedly received while hospitalized at Baptist Memorial Hospital in Desoto County, Mississippi. Defendants Marshall County, Mississippi, and Baptist Memorial Hospital–Desoto ("Baptist DeSoto") separately move for summary judgment and request that they be dismissed from this case. Baptist DeSoto, joined by Marshall County, also moves for transfer of the trial location from Greenville to Oxford in the event summary judgment is denied. Plaintiff and Baptist DeSoto move to strike certain opinion testimony of Dr. Thomas Fowlkes, an expert witness for Marshall County. In addition, the parties have filed several motions *in limine* regarding the admissibility of certain evidence at trial. For the reasons below, the Court finds that Plaintiff fails to establish a genuine issue of material fact as to whether Marshall County was deliberately indifferent to the decedent's serious medical needs. Therefore, summary judgment is granted in favor of Marshall County. Having dismissed all federal claims in this matter, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law

claims against Baptist DeSoto and dismisses those claims without prejudice. The motions to transfer, motions to strike, and motions *in limine* are denied as moot.

I

On February 7, 2011, at approximately 10:42 a.m., Princess Anderson went to the emergency room at Baptist Memorial Hospital in Collierville, Tennessee, complaining of nausea. Med. Records I [112-1] at 1-5, 23. An ultrasound and other tests were performed on Anderson, and it was determined that she was pregnant. *Id*. at 2, 11-12. Based on the test results, doctors could not rule out a possible ectopic pregnancy. *Id*. Anderson refused additional testing and recommended treatment before checking out of the hospital. *Id*. at 20.

Later that day, at approximately 10:25 p.m., Anderson was taken by ambulance to the emergency room of Baptist DeSoto in Desoto County, Mississippi, complaining of hyperventilation and opioid abuse. Med. Records II [112-2] at 1; Compl. [1] at 3. According to her medical records, Anderson told staff that she smoked marijuana and drank cough medicine containing codeine after she left the Collierville hospital earlier that day. Med. Records II [112-2] at 4, 10. Plaintiff admits that Anderson told her she "had smoked a blunt and took a swallow of syrup." Pl.'s Dep. [112-5] at 21.

One of the nurses who examined Anderson at Baptist DeSoto that night described her demeanor as anxious but alert and that Anderson answered questions appropriately. Nixon Dep. [112-3] at 6. According to the same nurse, Anderson became agitated whenever her fiancé was in the room with her and, as such, medical staff placed soft restraints on Anderson and put a sitter in the room with her so that she would not be left alone. *Id.* at 12-14. Anderson remained at the hospital overnight. During her hospitalization, medical staff reviewed her records from the Collierville hospital, performed testing on her, and determined that she suffered from acute

psychosis, intrauterine pregnancy, and a reaction to drug usage with an underlying psychiatric disorder. Med. Records II [112-2] at 5, 10. A psychiatric evaluation was performed, and medication was prescribed for her treatment. *Id.* at 8; Nixon Dep. [112-3] at 15, 23. When Anderson refused voluntary admission into a psychiatric facility,[1] plans were made to reevaluate her for involuntary psychiatric treatment. Med. Records II [112-2] at 10.

On February 8, 2011, at approximately 9:00 a.m., Plaintiff came to the hospital to check on Anderson. Pl.'s Dep. [112-5] at 14, 26; Faulkner Dep. [112-4] at 25-27. Anderson allegedly had been combative with hospital staff but calmed down while Plaintiff was present. Pl.'s Dep. [112-5] at 14, 26.

Also on February 8, 2011, the Chancery Court of Desoto County, Mississippi, issued a writ to the Sheriff of Desoto County to take custody of Anderson for mental examination. Med Records II [112-2] at 25-26. An order was also entered transferring the case to the Chancery Court of Marshall County. *Id.* at 22. Anderson was medically cleared from the hospital, and taken into custody by Desoto County law enforcement at approximately 11:45 a.m., who then transported her to the Marshall County Jail. *Id.* at 31; Doc. [112-7] at 1; Faulkner Dep. [112-4] at 20-23, 31; Harris Dep. [112-10] at 11. The Marshall County Sheriff's Office took custody of Anderson upon her arrival at the jail.[2]

On February 9, 2011, the Chancery Court of Marshall County, Mississippi, issued a writ to the Sheriff of Marshall County to take custody of Anderson because she was "mentally ill and

---

[1] Anderson's medical records dated February 8, 2011, however, indicate that she agreed to go to a crisis center for inpatient treatment. Med. Records II [112-2] at 36.

[2] Based on the Marshall County Sheriff's Department Booking Report, Anderson was arrested by Desoto County law enforcement at the hospital and taken to the Marshall County Jail on February 8, 2011. Doc. [112-7] at 1. Bobby Harris, the Jail Administrator, testified by deposition that Marshall County accepted and took control of Anderson at approximately 1:03 p.m. that day. Harris Dep. [112-10] at 11.

in need of mental treatment." [3] Doc. [112-6] at 10, 14. At all relevant times, Kenny Dickerson was the Sheriff of Marshall County. Compl. [1] at 1. The Chancery Court set a hearing and appointed an attorney to represent Anderson in the civil commitment proceedings. *See* Doc. [112-6] at 16.

When Anderson arrived at the Marshall County Jail, she was booked and placed in a cell by herself. Harris Dep. [112-10] at 14, 20. According to the jailer who completed the booking process, Anderson was not "really talking" when she came in.[4] Doc. [112-8] at 19. The jailer also claimed that Anderson's medical records were sent to the Marshall County Jail but were not opened because non-medical personnel were prohibited from opening medical records. *Id*. at 20. While Anderson was housed at the jail, officers periodically checked on her.[5] According to the Marshall County Jail Administrator, it was common for Anderson to "go out and lay on the floor" during her detention. Harris Dep. [112-10] at 20.

Marshall County Jail officers scheduled an initial prescreening psychological evaluation for Anderson. Doc. [112-8] at 42-43. On February 9, 2011, a mental health counselor came to the jail and conducted the evaluation on Anderson. Shelton Dep. [112-9] at 3-5. The counselor recommended that Anderson be examined for commitment and hospitalized for psychosis. *Id.* at

---

[3] On February 9, 2011, Plaintiff visited Anderson at Baptist DeSoto. That day, Plaintiff completed an affidavit and application for commitment of Anderson. Doc. [112-6] at 21-22. In the affidavit, Plaintiff stated that:

> [Anderson] keep repeating every sentence she say [sic] over [and] over. She tells everyone she is real high, lays on ground outside and says she's dieing [sic] and she don't put her words together in a sentence correctly anymore.

*Id*. at 21.

[4] The booking officer testified by deposition that, upon arrival, Anderson briefly talked to her about her hair and began "singing and hollering and talking to herself." *See* Doc. [112-8] at 27-29.

[5] According to the Marshall County Jail Administrator, mental patients/detainees are checked on more frequently than other inmates, approximately every 30 to 45 minutes. Harris Dep. [112-10] at 23, 31. In the case of a mental detainee who is suicidal, officers check on them more frequently, approximately every 15 minutes. *Id*. at 28. It is not clear from the record that officers checked on Anderson as frequently as required by the jail policy; however, based on the Marshall County Jailer Log and testimony from jail officers, Anderson was checked on throughout her detention. *See* Jailer Log [112-12]; Harris Dep. [112-10] at 56-57; Rahman Dep. [112-13] at 3-5; S. Faulkner Dep. [112-14] at 13-23; Doc. [112-8] at 36, 43-50.

4

8. According to the counselor, the Marshall County Jail was not given a copy of her report on Anderson. *Id.* at 5.

Also on February 9, 2011, Plaintiff visited Anderson in jail. Plaintiff claims she found Anderson sitting on a cart partially clothed with trash scattered on her cell floor. Pl.'s Dep. [112-5] at 34-38. In contrast, an officer at the jail claims Anderson was lying naked on the floor of her cell at that time. Doc. [112-8] at 38-39. After Plaintiff arrived, Anderson was cleaned, dressed, and locked in her cell. *Id.*

On February 10, 2011, the jail officer again found Anderson lying naked on the floor of her cell. *Id.* at 43, 48. Later that day, the jailer saw Anderson standing naked by her cell window. *Id.* at 50-51. When the jailer tried to talk to her, Anderson did not respond. *Id.* at 50. At an unspecified time, Anderson was given a blanket and apron.[6] *Id.* at 57-58. Plaintiff called to check on Anderson that day but did not come to the jail due to inclement weather conditions. Pl.'s Dep. [112-5] at 40-44.

On February 11, 2011, the Chancery Court of Marshall County, Mississippi, ordered that the Marshall County Sheriff transport Anderson to Alliance Health Care for examination related to her pregnancy.[7] Med. Records I [112-1] at 4. That same day, Anderson was found unconscious in her cell at the Marshall County Jail. Doc. [112-8] at 52-54. Plaintiff claims she saw Anderson lying on the floor of her cell naked in two inches of water and human waste, and blood was smeared on the walls of her cell. Pl.'s Dep. [112-5] at 51-52, 54-55. Marshall County Jail officers called paramedics, and Anderson was taken to Alliance Hospital. Doc. [112-8] at 54-55. She was later transported to Baptist Memorial Hospital Union County, where she stayed

---

[6] A jailer who regularly checked on Anderson claims she gave Anderson a blanket and apron on the second or third day she was detained at the Marshall County Jail. Doc. [112-8] at 58.

[7] The order was entered at Plaintiff's request. Plaintiff advised the chancery court that Anderson needed to go to a hospital for further testing. *See* Pl.'s Dep. [112-5] at 48.

5

from February 11 2011, to February 14, 2011. Mangle Dep. [145-7] at 3, 7. She was then transferred to Baptist DeSoto,[8] where she remained until her death on March 15, 2011. *Id.* at 7. Anderson's autopsy report reflects that she died from "multisystem organ failure of uncertain etiology." Doc. [112-17] at 5.

## II

On October 15, 2012, Plaintiff filed the instant action against Marshall County, Sheriff Kenny Dickerson, and Baptist DeSoto, for damages arising from the death of Princess Anderson. *See* Compl. [1]. In the complaint, Plaintiff asserts claims under 42 U.S.C. § 1983 against Marshall County and Sheriff Kenny Dickerson for deliberate indifference to Anderson's serious medical needs and for failure to provide reasonable medical care. *Id.* at 5-7. Plaintiff asserts state law claims against Baptist DeSoto for negligent medical treatment of Anderson. *Id.* at 7-8. By order dated April 24, 2013, Sheriff Kenny Dickerson was dismissed from the case.[9]

On March 14, 2014, Marshall County filed a motion for summary judgment on grounds that Plaintiff cannot prove subjective deliberate indifference or show that an unconstitutional policy of Marshall County was the moving force behind the alleged constitutional deprivations. Mot. [112]. The same day, Baptist DeSoto filed a motion for partial summary judgment on grounds that Plaintiff failed to state a viable claim against it and requested that the Court decline jurisdiction over the negligence claims in the event that summary judgment is granted to Marshall County. Mot. [108]. On April 4, 2014, Baptist DeSoto filed a motion for summary judgment renewing its claim for statutory immunity on the medical treatment of a patient undergoing involuntary commitment proceedings. Mot. [128].

---

[8] Anderson's diagnoses at the time were acute renal failure, hypernatremia, rhabdomyolosis, metabolic encephalopathy, acute liver injury, acute kidney injury, hypothermia, and staph infection. Compl. [1] at 5; Baptist DeSoto Answer [7] at 4.

[9] Dismissal was granted on Sheriff Dickerson's motion for summary judgment based on qualified immunity.

6

In addition to its dispositive motion, Baptist DeSoto moved for transfer of trial location from Greenville to Oxford. Mot. [147]. Marshall County filed a joinder in support of the motion to transfer trial location. Doc. [155]. Also before the Court are Plaintiff's and Marshall County's separate motions to strike the expert testimony of Dr. Thomas Fowlkes from trial. Mot. [124][126]. All motions have been fully briefed and are ripe for resolution. Because the claims against Marshall County serve as the basis of federal jurisdiction in this case, the Court will first consider Marshall County's motion for summary judgment.[10]

### III

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment should be granted when the evidence in a case shows that there is no genuine issue of any material fact and the moving party is entitled to judgment as a matter of law. Entry of summary judgment is appropriate, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). When evaluating whether summary judgment is appropriate, a district court reviews all well pleaded facts in the light most favorable to the nonmoving party. *Pratt v. City of Houston,* 247 F.3d 601, 606 (5th Cir. 2001). Factual controversies are to be resolved in favor of the nonmoving party only when "both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

The party moving for summary judgment must inform "the district court of the basis for its motion, and identify[] those portions of [the record] which it believes demonstrate the absence of a material fact." *Catrett*, 477 U.S. at 323. The nonmoving party must "go beyond the

---

[10] Summary judgment can be granted without consideration of Dr. Fowlkes' testimony and, for this reason, the Court will not address Plaintiff's and Baptist DeSoto's motions to strike.

pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" *Id*. at 324 (citations omitted). The nonmoving party cannot rely on metaphysical doubt, conclusive allegations, or unsubstantiated assertions but instead must show that there is an actual controversy warranting trial. *Little*, 37 F.3d at 1075 (internal quotation marks and citations omitted). In the absence of proof, the district court should not assume that the nonmoving party could have proved the necessary facts. *Paz v. Brush Engineered Materials, Inc*., 555 F.3d 383, 391 (5th Cir. 2009). "A complete failure of proof on an essential element renders all other facts immaterial because there is no longer a genuine issue of material fact." *Washington v. Armstrong World Indus.*, 839 F.2d 1121, 1122 (5th Cir. 1988).

### IV

The Due Process Clause of the Fourteenth Amendment confers pretrial detainees a right to medical care and protection from harm during their confinement. *Brumfield v. Hollins*, 551 F.3d 322, 327 (5th Cir. 2008) (citing *Hare v. City of Corinth*, 74 F.3d 633, 650 (5th Cir. 1996)); *Thompson v. Upshur Cnty.,* 245 F.3d 447, 457 (5th Cir. 2001) (citations omitted). This constitutional right means that pretrial detainees must not have "their serious medical needs met with deliberate indifference … [by] confining officials." *Thompson,* 245 F.3d at 457 (citations omitted). "A serious medical need may exist for psychological or psychiatric treatment, just as it may exist for physical ills." *Partridge v. Two Unknown Police Officers,* 791 F.2d 1182, 1187 (5th Cir. 1986). Deliberate indifference, in this context, requires the confining official to have "subjective knowledge of a substantial risk of serious harm to a pretrial detainee" and to respond with "deliberate indifference to that risk." *Hare,* 74 F.3d at 650.

Similar to "pretrial detainees, persons detained due to mental illness are shielded by the Due Process Clause because they are confined though not convicted of a crime." *Boston v.*

*Lafayette Cnty.*, 743 F. Supp. 462, 473-74 (N.D. Miss. 1990). Thus, "persons temporarily detained pending civil commitment proceedings are entitled to the same reasonable medical care provided [to] pretrial detainees." *Id*. at 474.

### A

In the complaint, Plaintiff asserts that Marshall County acted with deliberate indifference to Princess Anderson's serious medical needs and failed to provide her with reasonable medical care while detained at the Marshall County Jail awaiting involuntary commitment proceedings. Marshall County argues that it should be granted summary judgment because Plaintiff cannot prove that an unconstitutional county policy was the moving force behind the alleged violations of the decedent's rights. Plaintiff argues in response that, despite having a policy which provided for medical care, Marshall County failed to have an available physician or registered nurse at the jail[11] and failed to provide medical training to jail officers. For Plaintiff to survive summary judgment, she must submit sufficient evidence to raise a fact issue on her claims. *See McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002).

With respect to addressing medical issues of inmates, the Marshall County Jail policy and procedure manual states in relevant part:

> Intake and Booking of Inmates
>
> …
>
> 2.5 **IF THE INMATE IS VISUALLY INJURED OR OBVIOUSLY ILL**, as determined by medical observation or other available information, the Jailer shall refuse the admission of the inmate until the arresting officer takes the inmate to a physician or hospital for examination. If the inmate

---

[11] Plaintiff has not presented a basis for § 1983 liability to the extent she argues that Marshall County violated its own policy by not having an available physician or registered nurse on-site. *See McCarthy v. Waddell*, No. 3:13-cv-924, 2014 WL 1571678, at *3 (S.D. Miss. Apr. 17, 2014) (finding that breach of county policy fails to establish constitutional violation under § 1983) (citing *Harris v. Payne*, 254 F. App'x 410, 416-17 (5th Cir. 2007)); *Fraire v. City of Arlington*, 957 F.2d 1268, 1276 (5th Cir. 1992) ("even a negligent departure from established police procedure does not necessarily signal violation of constitutional protections").

9

>is examined by a physician and the physician, in writing, approves his/her admission to the facility, the Jailer shall admit the inmate.
>
>…
>
>Medical Procedures
>
>1.0 **POLICY** – In an effort to maintain the health of inmates and for the protection of the Jailers, the Facility shall provide necessary medical care.
>
>2.0 **PROCEDURE** – Receiving medical screening shall be performed on every inmate admitted to the Detention Facility. … Any medical problems discovered during the receiving screening shall be referred immediately to the Chief Deputy and/or Jail Administrator.
>
>…
>
>2.2 Emergency medical and dental care shall be handled as follows:
>
>>A. When a medical emergency arises, the Jailer will notify the Jail Administrator and/or Chief Deputy. The Jailer on the scene of the medical emergency will begin administering first-aid, provided he/she has received the necessary training. The Jailer shall notify the dispatcher to call the ambulance, Jail Administrator and Chief Deputy. The responsible physician shall be notified of the emergency and further action shall be taken upon direction of the responsible physician. … All psychiatric emergencies shall be handled in the same manner as medical emergencies.

Marshall County Policy [112-11] at 7-10.

According to a jailer who worked during the relevant time period, Marshall County Jail officers also received one day of training on dealing with mentally ill inmates. *See* Rahman Dep. [112-13] at 2-3. Officers were required to give more attention to mental detainees and special needs prisoners such as placing them in a single cell and checking on them frequently. *Id.* at 3; S. Faulkner Dep. [112-14] at 6; Harris Dep. [112-10] at 23, 31. Thus, in addition to the policy and procedure manual, the Marshall County Jail adopted an unwritten policy to give special care to mentally ill inmates.[12]

---

[12] An official policy can be valid whether written or verbal. *See Talib v. Gilley,* 138 F.3d 211, 215 (5th Cir. 1998) ("the validity of prison policies is not dependent on whether they are written or verbal. A policy is a policy…").

**B**

A plaintiff seeking to "establish municipal liability under § 1983 … must show the deprivation of a federally protected right caused by action taken 'pursuant to an official municipal policy.'" *Valle v. City of Houston*, 613 F.3d 536, 541 (5th Cir. 2010) (quoting *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978)). "[T]he inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989) (footnote omitted). In such an instance, failure to provide proper training may represent a municipal policy for which it may be held liable. *See id.* at 390 (stating that failure to provide proper training may represent official policy where "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers … can reasonably be said to have been deliberately indifferent to the need").

The underlying constitutional violation on which Plaintiff bases her failure to train claim is deliberate indifference to Anderson's serious medical needs. *See Whitley v. Hanna*, 726 F.3d 631, 648 (5th Cir. 2013) ("All of [plaintiff's] inadequate supervision, failure to train, and policy, practice, or custom claims fail without an underlying constitutional violation.") (citation omitted). "[T]o succeed on a *Monell* claim arising from a municipality's failure to adopt an adequate training policy, a plaintiff must demonstrate that: '(1) [the municipality's] training policy procedures were inadequate, (2) [the municipality] was deliberately indifferent in adopting its training policy, and (3) the inadequate training policy directly caused [the constitutional violation].'" *Kitchen v. Dallas Cnty.,* 759 F.3d 468, 484 (5th Cir. 2014) (quoting *Sanders-Burns v. City of Plano,* 594 F.3d 366, 381 (5th Cir. 2010)).

11

As to the first element, Plaintiff offers testimony from an expert witness to support her contention that the jail policies and procedures regarding mentally ill inmates were insufficient. Dr. Richard Sobel testified by deposition that he found the jail policy and compliance therewith[13] to be inadequate. Sobel Dep. [145-9] at 2-3. He criticized the policy for not giving specific instructions on how officers should deal with inmates on suicide watch. *Id*. at 3. Although Dr. Sobel acknowledged that jailers had testified to their normal procedure for suicidal inmates, he discredited the testimony because it was not written in the jail policy. He further found that the practice of not reviewing an inmate's medical information was inadequate. *Id*. at 4. Plaintiff also notes that the jail did not have a physician on staff despite language in the policy regarding a "responsible physician." *See* Marshall County Policy [112-11] at 10.

In response, Marshall County argues that the record evidence does not suggest that the jail policy fails to provide an adequate degree of medical care to inmates. Def.'s Reply [151] at 4. Marshall County asserts that, in addition to the written policy, each jailer received state certification and was trained in CPR and first aid. However, the Marshall County Jail Administrator testified by deposition that he had not received the necessary training to administer first aid and that he did not know whether the jailers who worked during the relevant time had received first aid training. Harris Dep. II [145-5] at 5.

Considering the written policy and the practice of jailers regarding their training, it is unclear whether Plaintiff demonstrated that Marshall County's policy and procedures were inadequate. However, for summary judgment purposes only, the Court will assume Plaintiff met the first element of a municipal liability claim premised on the failure to train jail officials.

---

[13] For purposes of a claim under § 1983, an officer's violation of departmental policy "is constitutionally irrelevant." *Pasco v. Knoblauch*, 566 F.3d 572, 579 (5th Cir. 2009) ("Violations of non-federal laws cannot form a basis for liability under § 1983…") (citations omitted).

12

As to the second element of the municipal liability claim, Plaintiff must establish that Marshall County was deliberately indifferent in adopting its training procedures. *Kitchen*, 759 F.3d at 484. "Deliberate indifference is a stringent standard, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Brown v. Bryan Cnty.,* 219 F.3d 450, 457 (5th Cir. 2000) (internal citations and quotation marks omitted). A plaintiff must show that "in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers … can reasonably be said to have been deliberately indifferent to the need." *Valle,* 613 F.3d at 547 (citation omitted). In "episodic act or omission" claims, such as those presented in this case, there are two ways a plaintiff may show a municipal's deliberate indifference for proper training: (1) pattern of similar violations; and (2) single-incident liability exception. *Kitchen*, 759 F.3d at 484. (citations omitted). Under the first approach, a plaintiff must "demonstrate that a municipality had [n]otice of a pattern of similar violations, which were fairly similar to what ultimately transpired when the [plaintiff's] own constitutional rights were violated." *Id.* (internal quotation marks and citations omitted). As for the second approach, a plaintiff must show applicability of an "exception for single-incident liability in a narrow range of circumstances where a constitutional violation would result as the highly predictable consequence of a particular failure to train." *Id.* (internal quotation marks and citations omitted).

Plaintiff does not offer any evidence of a pattern of similar violations at the Marshall County Jail, nor does she argue that there was such a pattern. Instead, Plaintiff focuses on alleged failures of Marshall County Jail officers to contact medical professionals or provide other forms of medical care for the decedent. "Proof of more than a single instance of the lack of

13

training or supervision causing a violation of constitutional rights is normally required before such lack of training or supervision constitutes deliberate indifference." *Thompson,* 245 F.3d at 459 (citing *Snyder v. Trepagnier*, 142 F.3d 791, 798-99 (5th Cir. 1998)). In general, a plaintiff must show "at least a pattern of similar violations" and "the inadequacy of training must be so obvious and obviously likely to result in a constitutional violation." *Thompson*, 245 F.3d at 459 (citations omitted). Here, Plaintiff does not argue or submit proof of any other instances where inadequate training resulted in a violation of a mental detainee or other inmate's right to medical care.[14] Accordingly, the Court must determine whether the limited exception for single-incident liability applies such that Marshall County was deliberately indifferent to Anderson's needs.

Plaintiff does not specifically raise the single-incident liability exception; however, she appears to suggest that the facts of this case warrant the applicability of this exception such that deliberate indifference is established on the part of Marshall County. Under the single incident exception, "a plaintiff must prove that the highly predictable consequence of a failure to train would result in the specific injury suffered, and that the failure to train represented the moving force behind the constitutional violation." *Sanders-Burns*, 594 F.3d at 381. "The single incident exception requires proof of the possibility of recurring situations that present an obvious potential for violation of constitutional rights and the need for additional or different police training." *Gabriel v. City of Plano*, 202 F.3d 741, 745 (5th Cir. 2000) (citation omitted).

Plaintiff does not argue or otherwise show that denial of a mental detainee or other inmate's right to medical care is the highly predictable consequence of a failure by Marshall County to train its jail officers. For example, she does not demonstrate a history of constitutional violations at the Marshall County Jail based on inadequate officer training. *See Roberts v. City*

---

[14] "[I]f there have been thousands of opportunities for municipal employees to violate citizens' constitutional rights, and yet there have been no previous violations, then the need for training is simply not 'so obvious.'" *Thompson v. Connick*, 578 F.3d 293, 299-300 (5th Cir. 2009), *rev'd on other grounds,* 131 S. Ct. 1350 (2011).

*of Shreveport*, 397 F.3d 287, 293 (5th Cir. 2005) (to prove municipal liability for failure to train, "mere proof that the injury could have been prevented if the officer had received better or additional training cannot, without more, support liability") (citation omitted).  It is not clear that additional training would have prepared jailers to detect the psychological and/or other medical issues from which Anderson suffered.  *See Eason v. Frye,* 972 F. Supp. 2d 935, 945 (S.D. Miss. 2013) (to impose liability for failure to train, "there must be specific allegations as to how a particular training program is defective") (citation omitted).  Marshall County Sheriff's Department took custody of Anderson pursuant to a chancery court writ which provided that she was mentally ill and in need of medical treatment.  Plaintiff's expert, Dr. Sobel, points to inadequacies in the jail policy regarding inmate booking, review of inmate medical records, and procedures for suicidal inmates.  *See* Sobel Dep. [145-9].  Yet, Plaintiff does not show that training on inmate booking or treatment of suicidal inmates would have prevented the alleged constitutional violation.  Further, Plaintiff does not explain what specific training would have been necessary for the officers in this case.  Even if the officers had reviewed Anderson's medical records, it is not clear that they would have treated her differently because she did not have specific discharge instructions from the hospital.  *See* Med. Records II [112-2] at 31, 36.  Thus, Plaintiff fails to show that denial of reasonable medical care was a highly predictable consequence of Marshall County's failure to train jailers.

Assuming Plaintiff was able to prove such was a highly predictable consequence, the single incident exception still would be inapplicable because Plaintiff does not demonstrate that Marshall County was deliberately indifferent to Anderson's serious medical needs.  Based on the record, officers periodically checked on Princess Anderson while she was confined at the Marshall County Jail.  Officers observed Anderson's pattern of taking off her clothes and lying

15

on the floor, but they found this conduct to be consistent with other mentally ill inmates at the jail. A policy was in place for officials to follow whenever inmates had physical injuries requiring medical treatment. While Plaintiff notes that Anderson did not receive medical treatment throughout her stay at the jail, Marshall County argues that officials made a medical appointment for Anderson but it was cancelled due to inclement weather conditions.

Plaintiff also submits deposition testimony from inmates housed at the Marshall County Jail who interacted with Anderson during her confinement. The inmates testified that they made several attempts to get jailers to make arrangements for outside medical care for Anderson because, they contend, she appeared in need of treatment. *See* Ayers Dep. [145-4]; Bogard Dep. [145-6]. Even if inmates provided such notice regarding Anderson's condition, it does not necessarily follow that jailers disregarded a known risk because, as reflected in the record, they periodically monitored Anderson. *See* Rahman Dep. [112-13] at 3; S. Faulkner Dep. [112-14] at 6; Harris Dep. [112-10] at 23, 31. In some instances, jailers even went into Anderson's cell to check on her.

"Deliberate indifference is more than negligence or even gross negligence." *Valle,* 613 F.3d at 547. In this case, Plaintiff does not show that the failure to train represented the moving force behind the alleged constitutional violation. Likewise, she does not produce sufficient evidence to meet the high standard of showing that deliberate indifference to mentally ill detainees was an obvious or highly predictable consequence of the failure to provide specialized medical training to jailers. *See Boston*, 743 F. Supp. at 473 ("there is no constitutional requirement that counties provide their jailers and law enforcement personnel with sophisticated medical training so that they will detect hidden medical problems"). For these reasons, the Court finds that the single-incident exception is inapplicable in this case.

16

Because Plaintiff does not show a pattern of similar violations or the applicability of the single-incident exception, she fails to establish deliberate indifference. Without such a showing, Marshall County cannot be held liable under § 1983 for failing to train jailers. Summary judgment is, therefore, appropriate and shall be granted in favor of Marshall County. The motions to strike and/or otherwise restrict the testimony of Marshall County's expert witness are now moot.

V

In addition to her § 1983 claims against Marshall County, Plaintiff asserts state law claims against Baptist DeSoto for alleged negligent medical treatment of Anderson while she was a patient at the Desoto County hospital. In its motion for partial summary judgment Baptist DeSoto requests that the Court decline to extend jurisdiction over the state law claims if summary judgment is granted to Marshall County. Plaintiff argues in response that it would be more efficient for the case to continue in this Court.

Title 28 U.S.C. § 1367 governs federal district court jurisdiction over supplemental state law claims. The statute provides in relevant part:

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

28 U.S.C. § 1367(a).

A district court may decline to exercise supplemental jurisdiction over a claim under subsection (a) if:

> (1) the claim raises a novel or complex issue of State law,
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

17

> (3) the district court has dismissed all claims over which it has original jurisdiction, or
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

*Id.* at § 1367(c).

The factors set forth in § 1367(c) as well as common law factors of judicial economy, convenience, fairness, and comity guide the Court's determination of whether to exercise or decline jurisdiction over supplemental state law claims. *See Mendoza v. Murphy*, 532 F.3d 342, 346 (5th Cir. 2008) (citing *McClelland v. Gronwaldt*, 155 F.3d 507, 519 (5th Cir. 1998), *overruled on other grounds by Arana v. Ochsner Health Plan*, 338 F.3d 433 (5th Cir. 2003)). "The general rule is that a court should decline to exercise jurisdiction over remaining state-law claims when all federal-law claims are eliminated before trial, but this rule is neither mandatory nor absolute; no single factor is dispositive[.]" *Brookshire Bros. Holding, Inc., v. Dayco Products, Inc.*, 554 F.3d 595, 602 (5th Cir. 2009) (citing *Batiste v. Island Records Inc.,* 179 F.3d 217, 227 (5th Cir. 1999)). A district court should not decline jurisdiction "over remaining state law claims following the dismissal of all federal-law claims and [remand or dismiss] a suit after investing a significant amount of judicial resources in the litigation[.]" *Brookshire Bros. Holding, Inc.*, 554 F.3d at 602 (citations omitted).

Regarding § 1367(c)'s first factor, Plaintiff's remaining claims of medical malpractice do not raise a novel or complex issue of state law. As to the second and third factors, the state law claims predominate over the claims over which the Court had original jurisdiction because all federal claims are now dismissed. *See Smith v. Amedisys Inc.*, 298 F.3d 434, 447 (5th Cir. 2002) (because trial court properly dismissed all federal law claims, "the state law claims now predominate over the nonexistent federal claims"). With regard to the fourth factor, the Court finds that there are no exceptional circumstances or compelling reasons to decline jurisdiction of

the state law claims. Thus, two of the § 1367(c) factors weigh in favor of retaining jurisdiction, and two weigh in favor of declining jurisdiction.

The Court now looks to the common law factors of judicial economy, convenience, fairness, and comity on the issue of whether it should retain or decline jurisdiction of the state law claims. Convenience is a neutral factor because Plaintiff argues that it would be more efficient to conclude the case in this Court, whereas Baptist DeSoto argues that it is more convenient for this matter to proceed in state court considering that the trial is currently set in Greenville. As to the remaining factors, this case has been pending approximately two years, though only before the undersigned judge since January 2014. Although discovery is complete, the case has not required a significant amount of judicial resources. In deciding the § 1983 claims, this Court was not required to spend significant time researching the legal issues involved in Plaintiff's state law claims. This case differs from *Smith v. Amedisys Incorporated*, where the district judge "devoted many hours to reviewing [parties'] memoranda, the attached exhibits and the record in [the] case; researching the legal issues involved; and reaching the decisions" on summary judgment. 298 F.3d at 447. Here, in resolving the federal law issues, the Court looked to whether Marshall County acted with deliberate indifference to the decedent's serious medical needs. In a prior order, the Court dismissed the § 1983 claims against Sheriff Kenny Dickerson on grounds of qualified immunity. *See* Order [36]. The Court has not considered any standards of medical care that might be owed by Baptist DeSoto to the decedent, nor has it considered whether any state law immunity applies to shield a party from liability for its involvement in a civil commitment proceeding. The interest of judicial economy, fairness, and comity would be served best by allowing the appropriate state court to resolve the medical malpractice and/or negligent treatment claims remaining in this case as that court would be more

19

familiar with the applicable state law. As such, the common law factors weigh heavily against retaining jurisdiction.

Having carefully considered the § 1367(c) and common law factors, the Court declines to exercise supplemental jurisdiction over the state law claims. Accordingly, Baptist DeSoto's request that the Court decline jurisdiction is granted, and Plaintiff's remaining claims are dismissed without prejudice.

## VI

In light of the analysis above, the Court finds that Marshall County's Motion for Summary Judgment [112] is GRANTED. The Court further finds that Baptist DeSoto's Motion for Partial Summary Judgment [108] is GRANTED IN PART AND DENIED IN PART. The motion is GRANTED only to the extent it requests that the Court decline supplemental jurisdiction over the remaining state law claims. In all other respects, the motion is DENIED AS MOOT. All remaining motions including Plaintiff's Motion to Strike [124], Plaintiff's Motions *in limine* [156][157], Baptist DeSoto's Motion to Strike [126], Baptist DeSoto's Motion to Transfer Trial Location [147], Baptist DeSoto's renewed Motion for Summary Judgment [128], Baptist DeSoto's Motion *in limine* [158], and Marshall County's Motions *in limine* [122][167] are also DENIED AS MOOT.

In accordance with Rule 58 of the Federal Rules of Civil Procedure, a separate judgment will be entered.

SO ORDERED, this the 24th day of December 2014.

/s/Debra M. Brown
**UNITED STATES DISTRICT JUDGE**